IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOSEPH WILLIAM WOLFE | § | |
| | § | |
| v. | § | 2:11-CV-031 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION TO DENY
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant JOSEPH WILLIAM WOLFE has filed with this Court a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge is of the opinion defendant is not entitled to relief and recommends the motion to vacate, set aside, or correct sentence be DENIED.

I.
FACTUAL AND PROCEDURAL HISTORY

In August of 2008, defendant WOLFE was stopped for speeding. The police officer conducting the traffic stop obtained consent to search and discovered 2.286 kilograms of methamphetamine in defendant's car. *United States v. Wolfe*, 2:08-CR-062, "Presentence Report," doc. 107 [hereinafter PSR], pg. 4 (June 26, 2009). Defendant was indicted for possession with intent to distribute methamphetamine. *Id.*, "Indictment," doc. 14, pg. 1 (Sept. 17, 2008). Defendant rejected the Government's plea offer and proceeded to a jury trial, where he was found guilty. *Id.*, "Rearraignment (No Plea)," doc. 122, pgs. 3, 5 (docketed Apr. 21, 2011); *Id.*, "Criminal Trial by Jury," doc. 169, pg. 169 (docketed June 25, 2009). After a presentence report was prepared, the

defendant was sentenced to a term of 235 months' incarceration. *Id.*, "Judgment," doc. 88, pg. 2 (Apr. 30, 2009).

The Fifth Circuit affirmed the Judgment on direct appeal. *United States v. Wolfe*, 370 Fed. Appx. 549, 2010 WL 1141596 (5th Cir. Mar. 25, 2010). Since no petition for a writ of certiorari was filed with the United States Supreme Court, the conviction became final 90-days after the Fifth Circuit's affirmance on appeal. *See* Sup. Ct. R. 13.1 (2010). Defendant WOLFE then filed the instant 28 U.S.C. § 2255 motion.

## II.
## DEFENDANT'S ALLEGATIONS

In support of his contention that his conviction and sentence were imposed in violation of the Constitution or laws of the United States, defendant presents the following grounds for relief:

1. Defendant received ineffective assistance of counsel during plea negotiations.

2. Defendant reasserts he received ineffective assistance of counsel during plea negotiations.

3. Defendant received ineffective assistance of counsel at the guilt/innocence and at the sentencing stages of trial.

4. The Government failed to turn over evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

5. Defendant's conviction and sentence violate a number of constitutional rights.

## III.
## MERITS

### A. Ineffective Assistance of Counsel Claims

In his first, second, and third grounds, defendant presents different claims of ineffective

assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test for analyzing ineffective assistance of counsel claims. The *Strickland* test requires a prisoner to demonstrate defense counsel's performance was both deficient and prejudicial. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

An attorney's performance is considered deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment to the United States Constitution. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064. That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S. Ct. at 2065.

Defendant WOLFE presents three (3) types of ineffective assistance claims. The prejudice which must be shown for each type of claim is as follows:

<u>Ineffective Assistance During Plea Bargaining</u>: In the context of deficient attorney performance resulting in the rejection of a plea bargain, a defendant can satisfy the prejudice prong of *Strickland* by demonstrating that

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court ( i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012).

<u>Ineffective Assistance During Trial</u>: In the context of deficient attorney performance during

the course of a jury trial, a defendant establishes prejudice by showing "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *see Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

Ineffective Assistance at Sentencing:  Finally, in the context of deficient attorney performance during sentencing, a defendant meets the prejudice requirement when he shows, "deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing . . . which would not have occurred but for counsel's error." *United States v. Phillips*, 210 F.3d at 351; *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993).

*1. Ineffective Assistance of Counsel During the Plea Negotiation Stage*

In his first and second grounds, defendant contends he received ineffective assistance of counsel prior to trial, specifically during plea negotiations. According to defendant, his attorney negotiated a plea agreement whereby he would plead guilty to a Superseding Indictment and would be subject to a maximum sentence of sixty months' incarceration. ("Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255," doc. 1, pg. 8 (Feb. 14, 2011). Specifically, defendant alleges:

> [he] had been trying, for 2 weeks prior to the [rearraignment] hearing, to communicate with his attorney to ask him questions about the plea agreement. He was concerned about his obligations under the plea agreement and about his safety if he entered the agreement. He had phoned the attorney's office b[ut] was never able to reach him by phone and the attorney never returned his phone calls during this time. When Mr. Wolfe expressed reluctance and confusion over the plea agreement and his obligations under the agreement, the plea offer was cancelled and a plea of not guilty was entered.

*Id.* at 9. The transcript of the rearraignment proceedings, however, reflects defendant WOLFE's

attorney, at the plea hearing said:

> Your Honor, we were notified that this hearing would be at 10:00 this morning. When I arrived to meet with Mr. Wolfe—I just spoke with him yesterday afternoon and didn't know there was any complications—but Mr. Wolfe has advised me this morning that he would like to talk with me prior to the plea in private.

*United States v. Wolfe*, 2:08-CR-062, "Rearraignment (No Plea)," doc. 122, pg. 3. After an off-the-record meeting between defendant and his counsel, defense counsel indicated defendant WOLFE was not satisfied with counsel's representation of him such that they were "not even communicating on a basic level." *Id.* at 4. At that point, after verifying with defendant that he understood he would face jury trial if he did not plead guilty, the District Judge concluded the proceedings. *Id.* at 4-5.

Defendant WOLFE later (after conviction and appeal) sent a motion to the Court offering the following:

> I was told at Randall County Jail that if I took a plea I would be killed in prison for being a snitch. I did not want to die and I could not get in touch with my Lawyer to discuss it. My right jaw had already been broken at the County jail and my mouth was wired shut. The next time I saw my Lawyer was in Court the day of the plea. He showed up late and did not want to speak before the Court session. I asked to get a new Lawyer before proceeding so that I could be counseled on what was required of me and tell them my concerns. I still intended to take the plea. After looking over the Court documents I later realized that my Lawyer thought he had discussed everything with me but I still had questions for him, I was **scared**.

*Wolfe*, 2:08-CR-062, "Motion to Request Reduction in Sentence," doc. 118, pg. 3 (July 6, 2010) (emphasis in original). The government did not again offer a plea bargain after defendant WOLFE failed to enter a guilty plea at rearraignment.

On October 23, 2013, the Court conducted an evidentiary hearing on the issue of ineffective assistance of counsel during plea negotiations. At the hearing, the Court heard the testimony of Mr. James West, who was defendant's first attorney, along with the testimony of defendant WOLFE.

<u>Defendant Wolfe's Testimony</u>: At the evidentiary hearing, defendant WOLFE testified he

and his attorney (Mr. West) met and discussed the indictment and the Government's evidence. According to defendant, during one of the first meetings between the two, Mr. West told defendant they could challenge the search of the vehicle because there was a question whether defendant gave consent to search the vehicle and whether defendant later revoked that consent. Defendant WOLFE testified his attorney said they had a "50/50" chance of winning a motion to suppress, which could ultimately lead to winning the case.

Later, Mr. West approached defendant WOLFE with a plea offer from the Government. By the terms of the offer, the Government would file a Superseding Information which would cap defendant's maximum exposure at sixty (60) months' incarceration plus three years of supervised release. Defendant testified Mr. West went over the plea papers with him and asked if he (WOLFE) wanted to take the deal. According to defendant, Mr. West additionally informed him that if they were to challenge the traffic stop or the search, they would lose the plea offer.

Defendant testified he wanted to accept the plea offer, but he had several questions and concerns. First, he did not understand how he could change his plea from not guilty to guilty, and was concerned he would be held in contempt of court for changing his plea. WOLFE also testified he had made his own calculations and that under his calculations the plea of sixty months' incarceration plus three years of supervised release was only slightly less than the minimum, ten-year sentence he was subject to if he went to trial (after taking into consideration good-time credits, participation in a substance abuse treatment program, and time in a halfway house). Defendant testified his attorney, Mr. West, told him his calculations were incorrect but never explained *why* they were incorrect. Defendant said his concerns were heightened by his understanding that the Court could impose any sentence it saw fit. Also, defendant did not understand why he would plead

guilty if there was a question as to whether his consent to search his vehicle was valid and whether his consent was revoked. Defendant also testified to his ignorance regarding the high rate of conviction in this division and the likelihood of success at a jury trial. Finally, defendant testified he feared for his own safety, as after his arrest for violation of pretrial conditions of release (when he was housed in Plymouth County Jail in Massachusetts) his jaw was broken. He was concerned he would be labeled a "snitch" and his personal safety would be in jeopardy.

WOLFE stated he had unsuccessfully been trying to get in contact with Mr. West so the two of them could go over his concerns before rearraignment. According to defendant, he had not communicated with his attorney for several days before the rearraignment. With his many concerns in mind and the lack of communication with his attorney, defendant arrived for rearraignment not yet ready to accept the plea agreement. Defendant testified he was willing (and in his opinion had) cooperated with the Government. He testified he had accepted the plea agreement at the time he signed the plea papers, and he still wanted a plea agreement. He simply wanted to discuss the terms of the plea agreement and receive some clarity on the above-discussed issues. He thought he would be able to accept the plea agreement even after the rearraignment.

<u>Trial Counsel's Testimony</u>: Defendant's first trial attorney, Mr. West, also testified at the evidentiary hearing. According to Mr. West, he communicated with defendant several times about his case, though none of those communications were reduced to writing. Mr. West indicated he and defendant went over all the discovery in the case, but that he never offered defendant any prediction or percentages regarding the likelihood of success on a motion to suppress. Mr. West said he discussed all of the options with defendant and the consequences of those options. He discussed the punishment range defendant was facing, both under the statute and the sentencing guidelines. He

stayed on the phone with or continued any in-person meeting until all of defendant's questions were answered and his concerns resolved. Mr. West testified it is his practice to not leave a client meeting until the client understands everything covered in the meeting.

Once he obtained a plea offer from the Government, Mr. West testified he reviewed not only the contents of the offer with defendant but also the procedures attendant to the rearraignment proceedings. He also explained that part of the plea offer was that defendant would not file a motion to suppress. Mr. West testified defendant "never once" expressed confusion over the punishment range he was facing. Mr. West also indicated he met face-to-face with defendant at least three times approximately one month before rearraignment and spoke with defendant on the phone for approximately two hours the day before rearraignment.

On the day of rearraignment and before the proceedings were to begin, defendant communicated to Mr. West that he wanted to speak privately with Mr. West. According to Mr. West, defendant wanted to give the Government the name of a person involved in illegal activities in exchange for not going to prison at all. Mr. West spoke with the Assistant United States Attorney, who said she was not interested in defendant's information and would not accept anything less than five years' incarceration. When Mr. West conveyed this to defendant (at the off-the-record meeting allowed by the Court during the rearraignment proceedings), defendant stated he would not take the plea bargain. Mr. West testified he told defendant at that point that to reject the plea offer was against his advice and that he would lose the opportunity to enter into a plea agreement if he did not accept the one which had been offered. At that point, defendant indicated he no longer wanted Mr. West to continue as his attorney. Mr. West testified defendant never mentioned any fear of retaliation or concerns with sentence calculations at their meeting the day of

rearraignment. In Mr. West's opinion, there was nothing about defendant's demeanor indicating he was confused on any issue, and defendant understood what it meant to turn down the plea offer at that point.

### a. Representation by Defendant's First Attorney

All of defendant's written claims regarding ineffective assistance of counsel are conclusory, and contain no substantive analysis. *See United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989) (noting in the context of a 28 U.S.C. § 2255 motion that "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue"); *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992) ("In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial, we [can find] no merit to these [claims]."). The greatest detail defendant offers in his written pleadings as to why he rejected the plea offer is that he feared for his safety. Defendant WOLFE fails, however, to link his safety concern to any deficient performance by his attorney.

During the October 23, 2013 hearing, defendant WOLFE offered more detail about other concerns he vaguely referenced in his written pleadings. The evidentiary hearing, however, was the first time defendant ever presented such claims to the Court. Specifically, defendant's concerns about the consequences of changing his plea, his questions about the calculation of jail time under the plea as opposed to after a trial, and his questions about foregoing filing a motion to suppress were not presented to the Court in any pleading before the hearing. Consequently, they are not properly before the Court.

Even if all of defendant's claims were properly before the Court, they are insufficient grounds upon which the Court could grant 28 U.S.C. § 2255 relief. Mr. West, defendant's first trial

attorney, flatly contradicted all of defendant's claims.  Mr. West testified he spoke with defendant about the case many times, reviewing both the evidence in the case and the sentencing guidelines, as well as the potential efficacy of a motion to suppress, and the implications of a plea agreement and of a jury trial.  Importantly, Mr. West testified he spoke with defendant for approximately two hours the day before rearraignment, reviewing with defendant both the plea and the consequences of it.  Defendant WOLFE did not show any confusion over any issue nor did he voice any concerns during that conversation.  Mr. West's testimony is supported by record evidence from the rearraignment, when Mr. West indicated he *had* spoken with defendant the day before rearraignment and was unaware of any complications regarding defendant's acceptance of the plea offer.  *See United States v. Wolfe*, 2:08-CR-062, "Rearraignment (No Plea)," doc. 122, pg. 3.  To the extent the testimony of Mr. West conflicts with that of defendant requiring the Court to make a credibility determination, the undersigned, having observed the demeanor of both witnesses, and having considered their testimony in light of other evidence in the case, accepts as true the testimony of Mr. West.  The Court finds, regardless of defendant's ultimate reason(s) for rejecting the plea agreement at rearraignment, he did not reject the agreement because he was confused about the terms or consequences of the agreement, or due to any malfeasance or ineffectiveness by counsel.

By defendant's own testimony and by the written evidence before the Court, defendant understood the maximum term of imprisonment he was facing.[1]  (Government Exhibit 10, "Plea Agreement").  Mr. West further indicated not only that defendant understood the maximum term he

---

[1] Defendant contends he did not understand the Court to be bound by the statutory maximum.  Defendant's testimony is belied by the portion of the Plea Agreement, signed by defendant, stating "[t]he defendant fully understands that the actual sentence imposed (<u>so long as it is within the statutory maximum</u>) is solely in the discretion of the Court." (Government Exhibit 10, "Plea Agreement," pg. 3).

was facing, both under the plea agreement and if he took his case to jury trial, but that defendant WOLFE also understood the consequences of either course of action. Mr. West's testimony also contradicts any contention by defendant that counsel did not fully inform himself of and communicate to defendant all of the facts and laws relevant to allow defendant WOLFE to make an informed decision whether to plead guilty or not guilty and proceed to trial. Mr. West indicated he had many communications with defendant, and it is clear Mr. West was well acquainted with the facts of the case. Given this testimony, the Court finds Mr. West acted competently and with diligence and was not deficient in any aspect of his representation of defendant.[2] *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005) (setting forth the responsibilities of an attorney for diligent representation during the plea process).

### b. *Representation by Defendant's Second Set of Attorneys*

Regarding the representation by the attorneys defendant hired after his first attorney (Mr. West) withdrew from the case, defendant fails to demonstrate ineffective assistance. Defendant indicates his attorneys should have told him about the possibility of pleading guilty without the benefit of a plea agreement with the Government. Defendant contends he would have faced a term of 168 to 210 months' incarceration were he to have pled guilty, if granted credit for acceptance of responsibility. Forcing the Government to prove its case at a jury trial, defendant was subject to a sentence of 235 to 293 months' incarceration; the difference again being the lack of a reduction for acceptance of responsibility. Defendant has failed to demonstrate he would have been given credit for acceptance of responsibility. Defendant WOLFE's pretrial release was revoked for engaging in

---

[2]To the extent defendant complains of Mr. West's failure to advise him of the unlikelihood of success if the case were to proceed to jury trial, the Court accepts as true Mr. West's testimony that he advised defendant of the high conviction rate of the Assistant United States Attorney in this Division.

criminal activity. Consequently, he would not necessarily have been entitled to acceptance of responsibility even if he had pled guilty. Secondly, defendant has failed to demonstrate he would have accepted a plea for a minimum of 168 months' incarceration when he rejected a sentence for a maximum of 60 months' incarceration. Defendant's position is simply untenable.

Defendant contends counsels' failure to investigate manifested in counsels' failure to advise him of the possibility of obtaining a reduction in his sentence for acceptance of responsibility by agreeing to a bench trial on stipulated facts. First, WOLFE fails to show how a bench trial instead of a jury trial would have qualified him to receive acceptance of responsibility. Secondly, WOLFE fails to overcome the strong presumption that counsel's performance was not deficient. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Ross*, 694 F.2d at 1012. Even if there was deficient performance, defendant fails to show prejudice. Defendant's argument presumes, without basis, the choice to proceed to a bench trial on stipulated facts was his and his alone if counsel had only made him aware of the procedure. To the contrary, a bench trial on stipulated facts is possible only if "(1) the defendant waives a jury trial in writing; (2) the government consents; *and* (3) the court approves." *See* Fed. R. Crim. P. 23(a) (emphasis added). Consequently, both the Government and the Court would have had to agree with this strategy. Considering the Government's unwillingness to re-offer the original plea agreement after the rearraignment, defendant has not shown the Government would have agreed to waive a jury trial. Moreover, the Court is under no obligation to conduct a bench trial, even in cases where the defendant and the Government both agree to it. The District Judge reviewing this Report and Recommendation is the same Judge that would have given approval for defendant to proceed to bench trial, and if that Court would have been inclined to hold a bench trial on stipulated facts, it can order further development on the issue of whether the Government would have likewise approved such a strategy, if the Judge finds such development

necessary. In the undersigned's opinion, defendant has failed to demonstrate prejudice as he has failed to show the Government and the Court would have agreed to a bench trial, even if he had requested one.[3] *See Creel*, 162 F.3d at 395.

### 2. *Ineffective Assistance of Counsel During the Trial on Guilt/Innocence and During Sentencing*

In his third ground, defendant contends he received ineffective assistance of counsel during jury trial and during sentencing based upon counsel's failure to investigate; present mitigating evidence; object to the admission of evidence; request proper jury instructions and object to insufficient jury instructions; object to improper jury arguments or otherwise request a curative instruction; investigate and present evidence during the sentencing phase; move for a downward departure; object to the Court's sentence; and not remove a conflict of interest. Defendant Wolfe also argues, albeit in a single sentence, that he received ineffective assistance of counsel on appeal.

The majority of these arguments are conclusory to the point the Court is not able to discern defendant's actual contentions.[4] As such, defendant fails to raise an issue the Court is capable of

---

[3]Defendant additionally complains of counsels' failure to inform him of the unlikelihood of success following a jury trial. Even assuming deficient performance, defendant remains unable to show prejudice as he cannot show how such knowledge would have changed anything, *i.e.*, defendant fails to show prejudice because he fails to show that even if he knew acquittal was very unlikely, he would have (or could have) taken a different course of action. *See Creel*, 162 F.3d at 395.

[4]For example, defendant contends, without elaboration, counsel:

- failed to advise defendant as to all facts and law relevant to his decision to plead not guilty and proceed to trial
- failed to investigate or present available, material, exculpatory evidence and testimony at trial and failed to object to the unlawful admission of evidence by the prosecution
- failed to timely request appropriate jury instructions and to timely object to insufficient instructions
- failed to timely object to improper argument by the prosecution and/or to timely ask for curative instructions for the improper argument
- failed to investigate or present available evidence and legal authority material to the sentencing of defendant.
- failed to object to, unlawful, false and unreliable evidence used to determine defendant's guidelines sentencing range and ultimate sentence
- failed to timely argue defendant was denied his Sixth Amendment constitutional rights by the increase in his sentence by facts not charged in indictment, not submitted to a jury, and not proven beyond a reasonable doubt or admitted by defendant
- failed to investigate or present the strongest issues available to defendant for his direct

reviewing. *See Woods*, 870 F.2d at 288 n. 3.

The Court is able to discern defendant's contention he received ineffective assistance of counsel because of counsels' failure to move for a downward departure pursuant to 18 U.S.C. § 3553. Wolfe, however, fails to advance what argument counsel could have made that would have resulted in the sentencing judge assessing a sentence below the 235 month sentence. Further, the sentencing transcript reflects counsel made a very persuasive plea for a lesser sentence or a downward departure, but such argument was unsuccessful.

It is not at all clear that Wolfe has asserted a claim that counsel was ineffective for failing to move, pursuant to § 5C1.2 of the sentencing guidelines, for a lesser sentence. Even if he has asserted such a claim, it does not entitle him to relief. First, Wolfe has not shown he qualified for § 5C1.2 treatment and, even if he did qualify, he has not shown the court would have granted any such § 5C1.2 request.

Defendant Wolfe has failed to demonstrate deficient performance or prejudice, and his contentions of ineffective assistance of counsel at trial and on appeal must fail.

## B. Brady Violation

In his fourth ground, defendant contends the Government failed to turn over evidence regarding one of its witnesses, DEA Agent Shane Reese, in violation of *Brady v. Maryland*, 373

---

appeal and failed to preserve viable issues for collateral review
- labored under an actual conflict of interest which adversely affected their performance during the pretrial, plea, trial, sentencing and direct appeal process in this case. Counsel owed a 'duty' other than to defendant. This duty was in conflict with the duty owed to defendant. Counsel chose between the duties. This choice adversely affected the performance of counsel during the pretrial, plea, trial sentencing and direct appeal process.

(28 U.S.C. § 2255 Motion, doc. 1, pgs. 21-23 (Feb. 14, 2011)). Defendant's contentions continue in this vein of unspecified error.

U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). All criminal defendants have a "constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984) (citing *Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1196). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id.*, 104 S.Ct. at 2532. This duty applies irrespective of the good or bad faith of the prosecution. *Banks v. Dretke*, 540 U.S. 668, 124 S.Ct. 1259, 1272, 157 L.Ed.2d 1166 (2004).

There are three elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused; (2) the State must have suppressed the evidence, and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280, 119 S.Ct. at 1948. If the evidence could have put the whole case in such a different light as to undermine confidence in the verdict, the evidence is material. *Youngblood v. West Virginia*, 547 U.S. 867, 870, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269 (2006).

One of the government's witnesses at trial was Agent Reese. "Transcript," vol. I, pg. 128. Agent Reese testified to interpreting defendant's drug ledger and discussing the chain of custody involved between when drugs (in general and defendant's drugs) are discovered until they are tested by DEA's lab in Dallas, Texas. *Wolfe*, 2:08-CR-062, "Criminal Trial by Jury," doc. 105, pgs. 126-130. Agent Reese's testimony was very brief, lasting only 5 pages of the 171-page transcript. Defendant's counsel asked Agent Reese one question, but then withdrew it. *Id.* at 130.

Four (4) years before his testimony in defendant's trial, and while he was a state police officer, Agent Reese testified in state court during a hearing on a motion to suppress in an unrelated case. *See* "Appendix to Response to Motion Under 28 U.S.C. § 2255," doc. 11 (Apr. 26, 2011). After the hearing, the judge presiding over the proceedings entered "Findings of Facts and Conclusions of Law." *Id.*, pg. 3. In those findings, the court stated "Officer Reese was not a credible witness. His testimony was vague and equivocal. The Prosecutor was compelled to ask leading and bolstering questions to elicit facts from the officer." *Id.* The state court judge concluded "Officer Reese did not have probable cause to search the defendant's vehicle. Officer Reese's search of the defendant's vehicle was unreasonable and unlawful." *Id.* Defendant now contends the prosecutor violated *Brady* by failing to disclose these state court Findings of Fact and Conclusions of Law.

Assuming, for purposes of argument, the evidence concerning the state court's four-year-old determination of Agent Reese's testimony in an unrelated case and in circumstances unrelated to those in defendant WOLFE's case would have been favorable to defendant, and assuming the prosecution either willfully or inadvertently suppressed this evidence, defendant WOLFE cannot demonstrate prejudice. Prejudice for *Brady* purposes occurs when the suppressed evidence is material. *Banks v. Dretke*, 540 U.S. 668, 691, 124 S.Ct. 1256, 1272, 157 L.Ed.2d 1166 (2004). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280, 119 S.Ct. at 1948. If the evidence could have put the whole case in such a different light as to undermine confidence in the verdict, the evidence is material. *Youngblood v. West Virginia*, 547 U.S. 867, 870, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269 (2006).

The evidence defendant contends the prosecution should have disclosed was not material to the determination of guilt. There was a *great* deal of evidence directly linking defendant to drug trafficking, including the testimony of the police officer who discovered the drugs and the man who accompanied defendant on the trip and personally viewed the transaction whereby the defendant gave a large sum of money to a drug supplier who then gave defendant several pounds of methamphetamine. *Wolfe*, 2:08-CR-062, "Criminal Trial by Jury," doc. 105, pgs. 108-09. In contrast, Agent Reese's testimony against defendant was minimal and indirect. *See id.* pgs. 126-130. If Agent Reese had not at all testified, or if his testimony had been wholly impeached, there is no likelihood the jury would have not returned a guilty verdict. *See Strickler*, 527 U.S. at 281-82, 119 S.Ct. at 1948. Put another way, the evidence concerning a state court's finding regarding Agent Reese's memory in an unrelated case would not have put this case against defendant WOLFE in such a different light as to undermine confidence in the jury's verdict. *See Youngblood*, 547 U.S. at 870, 126 S.Ct. at 2190. Defendant's fourth ground of error is without merit.

### C. Other Constitutional Violations

The entirety of defendant's fifth ground for relief is as follows:

> [Defendant's] Conviction And Sentence Are Violative Of His Right To Freedom Of Speech And To Petition, His Right To Be Free of Unreasonable Search And Seizure, His Right To Due Process Of Law, His Rights to Counsel, To Jury Trial, To Confrontation of Witnesses, To Present A Defense, And To Compulsory Process, And His Right To Be Free Of Cruel And Unusual Punishment Under The Constitution.

("Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255," doc. 1, pgs. 8-9 (Feb. 14, 2011) [sic throughout]). Defendant does not favor the Court with any additional development or analysis of these contentions.

These contentions are conclusory to the point the Court is unable to discern defendant's

argument. Consequently, they are insufficient to raise any issue capable of review by this Court. *See Woods*, 870 F.2d at 288 n. 3 (citing *Ross*, 694 F.2d at 1012) (stating "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue").

## IV.
## CONCLUSION

The evidence shows defendant WOLFE rejected a plea bargain carrying a statutory maximum of five (5) years in prison. After a jury trial, WOLFE was sentenced to, and is now serving, a sentence of 235 months. Quite understandably, defendant WOLFE would like to be excused from his decision to go to trial and be allowed to return to the point where he was offered a maximum 60-month sentence. Based upon the arguments he has presented and the evidence received, defendant WOLFE simply is not entitled to the remedy he seeks.

WOLFE's initial trial counsel, Mr. West, gave his opinion why WOLFE rejected the plea agreement, testifying that defendant WOLFE did not want to agree to anything which would require him to serve time. So long as counsel adequately presents the options available to the defendant so that an informed decision can be made whether to plead guilty or not, counsel's representation is considered effective. Counsel is not ineffective for failing to force or coax a defendant into pleading guilty.

V.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge the Motion to Vacate, Set Aside, and Correct Sentence, filed by defendant JOSEPH WILLIAM WOLFE be DENIED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___28th___ day of February 2014.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).